IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONTLAKE COMMUNITY CLUB; MONTLAKE LLC; STELTER MONTLAKE, LLC; BTF ENTERPRISES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL M. MATHIS, in his official capacity as Division Administrator for the Washington Division of the Federal Highway Administration; FEDERAL HIGHWAY ADMINISTRATION, an agency of the UNITED STATES DEPARTMENT OF TRANSPORTATION; WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; ROGER MILLAR, in his official capacity as Washington Secretary of Transportation,<br><br>Defendants. | NO.<br><br>COMPLAINT |

**INTRODUCTION**

1. This is an action for declaratory and injunctive relief challenging the failure of the Federal Highway Administration (FHWA) and the Washington Department of Transportation

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

(WSDOT) to supplement its environmental impact statement when the agencies suddenly changed their plans for the SR 520 highway expansion project and decided to close the Montlake Market in the Montlake neighborhood of Seattle.

2. FHWA and WSDOT prepared an environmental impact statement for the SR 520 expansion project in 2011, but at that time, the agencies were not planning to take the Montlake Market property and close the market. Later re-evaluations of the project also did not analyze the impacts of closing the market. The agencies are now proceeding with plans to condemn the land and close the market without ever analyzing the impacts of closing the market. The National Environmental Policy Act (NEPA) precludes the agencies from taking such action before analyzing the likely effects of that action.

3. The Montlake Market serves a vital function as the only grocery store in the Montlake community. Hundreds of Montlake residents walk, bike or make a short drive to the store to serve their everyday needs. No other grocery store options are nearby. Closing the Montlake Market will force Montlake residents to travel on severely congested Seattle streets to reach alternative markets in the University District or on Capitol Hill. A trip of a few minutes will be transformed to a 20-minute or longer slog through Seattle traffic.

4. Closing the market and using the property for five to ten years of construction will cause other adverse impacts on the community, too. Noise and air pollution near the Montlake Market will increase.

5. The agencies never acknowledged or analyzed the impacts of closing the market before making their decision to do so. NEPA requires analysis and disclosure of environmental impacts before government agencies make consequential decisions.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

6. Closing the Montlake Market is a significant new circumstance that has significant, adverse, environmental consequences on the Montlake community. Therefore, the plaintiffs request that this court (1) declare that the defendants are in violation of their duties under NEPA; (2) order the defendants to undertake a thorough analysis, as required by NEPA, of the direct, indirect, and cumulative impacts of closing the Montlake Market, and to consider alternatives to their proposal to close the Montlake Market; (3) enjoin the defendants from continuing project activities that would necessitate closing the market until such time that defendants come into compliance with NEPA; and (4) provide certain other relief as requested below.

## **JURISDICTION**

7. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1346 (federal defendant).

8. The relief requested is authorized pursuant to 28 U.S.C. §§ 1651 and 2201 to 2202, as well as 5 U.S.C. § 706(1) and (2). An actual and present controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## **VENUE**

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e). All or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, plaintiffs reside in this district, and the land, resources, and agency records in question are located in this district.

10. Pursuant to LCR 3(d), venue is appropriate in Seattle because the claims arose in King County.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

**PARTIES**

11. Plaintiff Montlake Community Club is a nonprofit organization dedicated to maintaining and improving the quality of life within the Montlake neighborhood of Seattle. Montlake is a residential neighborhood in central Seattle, bounded on the north by Portage Bay and the Montlake Cut of Lake Washington, to the east by the Washington Park Arboretum, and to the south and west by Interlaken Park. The Montlake Community Club considers all residents, property owners, and business operators with street addresses in the Montlake neighborhood as members of the Montlake Community Club. The interests of the Montlake Community Club include maintaining and nurturing the natural environment and history of the Montlake neighborhood.

12. Montlake, LLC and Stelter Montlake, LLC (collectively, "the owners") are the owners (tenants-in-common) of the real property on which the Montlake Market is located and lease the land, building and site improvements to the owner of the Montlake Market and other businesses.

13. BTF Enterprises, Inc. ("BTF") is an owner of the Montlake Market and owner of the adjacent gas station. BTF is a tenant of the owners.

14. Defendant Federal Highway Administration (FHWA) is a division of the United States Department of Transportation and is responsible for overseeing State and local governments in the design, construction, and maintenance of the United States highway system.

15. Defendant Daniel M. Mathis is named in his official capacity as Division Administrator for the Washington Division of the Federal Highway Administration. In that capacity, he is charged with overseeing and approving FHWA projects that occur within the state of Washington.



Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

16. Defendant Washington State Department of Transportation (WSDOT) is an agency of the State of Washington tasked with overseeing transportation, including construction of highways, within Washington. WSDOT is the proponent of the SR 520 project.

17. Defendant Roger Millar is named in his official capacity as Washington Secretary of Transportation. In that capacity, he is charged with overseeing and approving WSDOT projects that occur within the state of Washington.

**STATEMENT OF STANDING**

18. The interests at stake in this matter are germane to the real estate, business and leasehold interests of Montlake LLC, Stelter Montlake LLC and BTF Enterprises. Montlake LLC and Stelter Montlake own the property containing the Montlake Market. BTF owns and operates the Montlake Market business. The Montlake Market is a pillar of the Montlake community, serving as the only grocery store for Montlake residents and as a gathering point for members of the community.

19. These businesses own property or leasehold interests which will be directly impacted by the defendants' actions at issue here. The agency's violations of law as set forth in the claims for relief herein threaten the owners' and BTF's property interests and their interest in maintaining a livable, walkable Montlake community.

20. The defendants' unlawful actions will adversely affect the property owners' interests by resulting in the destruction of the Montlake Market (and taking of the owners' property and BTF's leasehold interest) without undergoing the environmental review required by NEPA. The interests of the owners and BTF have been and will continue to be injured by the defendants' failure to comply with NEPA. Unless the relief prayed for herein is granted, the owners and BTF will suffer ongoing and irreparable harm and injury to their interests.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

21. The Montlake Community Club is dedicated to enhancing the quality of life in the Montlake community. The defendants' unlawful actions will significantly and adversely affect the Community Club's organizational interests, as well as the interests of its individual members. Removing the only grocery store in the community without proper environmental review will adversely impact the organization's interests and the interests of the club's individual members.

22. The injuries to the owners, BTF and the Montlake Community Club are likely to be redressed by a favorable decision of this Court because an order granting the relief requested in this Complaint will ensure that the project will not result in the destruction or adverse modification to an important pillar of the Montlake neighborhood without the due consideration required by NEPA.

## LEGAL BACKGROUND

### A. National Environmental Policy Act

23. The National Environmental Policy Act establishes a "national policy [to] encourage productive and enjoyable harmony between man and his environment." NEPA is intended to reduce or eliminate environmental damage and to promote "the understanding of the ecological systems and natural resources important to" the United States. 42 U.S.C. § 4321.

24. Accordingly, NEPA "establishes some important 'action-forcing procedures.'" *Robertson v. Methow* Valley *Citizens Council*, 490 U.S. 332, 348 (1989) (quoting 115 Cong. Rec. 40416 (remarks of Sen. Jackson)). The heart of NEPA is a procedural requirement instructing federal agencies to:

> include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

> (i) the environmental impact of the proposed action,
>
> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
>
> (iii) alternatives to the proposed action,
>
> (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
>
> (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2)(C). This detailed statement is called an environmental impact statement or EIS.

25. The Council on Environmental Quality (CEQ), in the Executive Office of the President of the United States, has promulgated regulations providing guidance to federal agencies on when an EIS must be prepared and how it must be crafted. *See* 40 C.F.R. Parts 1500-1508. FHWA has also promulgated its own regulations to use for compliance with CEQ's regulations. *See* 23 C.F.R. Part 771.

26. CEQ's regulations define a major Federal action to include "actions with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18.

27. An EIS "shall" be supplemented if "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). An agency "[m]ay also prepare supplements when the agency determines that the purposes of the Act will be furthered by doing so." 40 C.F.R. § 1502.9(c)(2). In other words, "[i]f there remains 'major Federal actio[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared." *Marsh*, 490 U.S. at 374 (quoting 42 U.S.C. § 4332(2)(C)). The obligation imposed by this regulation is mandatory and nondiscretionary and is triggered whenever "the remaining governmental action would be environmentally significant." *Marsh*, 490 U.S. at 372 (internal quotation marks omitted).

28. FHWA regulations require an EIS to be supplemented whenever the agency determines that:

> (1) Changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or
>
> (2) New information or circumstances relevant to environmental concerns and bearing on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS.

23 C.F.R. § 771.130(a)(1)–(2).

29. Federal agencies are required to consider the "reasonably foreseeable" effects of the proposed major Federal action, including effects that are direct, indirect, or cumulative. 40 C.F.R. §§ 1508.7, 1508.8, 1508.25.

30. The agency must "[r]igorously explore and objectively evaluate all reasonable alternatives" to the proposed agency action, including a "no-action" alternative. 40 C.F.R. § 1502.14(a), (d). The alternatives analysis is the "heart" of the EIS. 40 C.F.R. § 1502.14.

31. In addition to alternatives, the EIS must "[i]nclude appropriate mitigation measures not already included in the proposed action or alternatives." 40 C.F.R. § 1502.14(f).

**B. Administrative Procedure Act**

32. The Administrative Procedure Act (APA) provides a right to judicial review to any "person suffering legal wrong because of agency action." 5 U.S.C. § 702. The APA defines agency

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

action to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2).

33. The APA provides that a court shall compel an agency action that is "unlawfully withheld or unreasonably delayed," and shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1) & (2)(A).

## FACTUAL ALLEGATIONS

### A. The Montlake Market

34. The Montlake Market plays a vital role within the Montlake community. There are no other full-service grocery stores in the Montlake neighborhood.

35. In addition to providing groceries to the Montlake community, the Montlake Market also serves as a community gathering point and provides a valuable service to the community.

36. The Montlake neighborhood is considered a very "walkable" neighborhood, meaning that residents can fulfill many basic daily functions, such as dining, shopping, and entertainment, by walking. The Montlake Market plays a significant role in the neighborhood's walkability, allowing residents to fulfill their basic grocery needs by walking to the Montlake Market, if they choose.

37. Forcing residents to drive outside of the Montlake neighborhood to shop for groceries instead of walking to the Montlake Market will result in hundreds of new trips per day. In addition, the short vehicle trips taken by those who choose to drive to the Montlake Market would become much longer vehicle trips extending outside of the Montlake neighborhood.

38. The closest grocery store to the Montlake neighborhood (besides the Montlake Market) is in the University Village mall. Traffic between University Village and the Montlake

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

neighborhood is currently at a crawl much of the day. Forcing Montlake residents onto that stretch of road will cause a huge impact to hundreds of Montlake residents and add hundreds of new trips to an already overtaxed road system.

39. Removing the Montlake Market will forever change the character of the Montlake neighborhood. It would no longer be a walkable community that is easily accessible—instead, residents would be forced to drive to fulfill the most basic of human needs.

**B. The SR 520 I-5 to Medina Project.**

40. In June 2011, the FHWA and WSDOT published the final environmental impact statement (FEIS) for the "SR 520, I-5 to Medina: Bridge Replacement and HOV Project." The purpose of the SR 520 project is to increase highway capacity on the aging Evergreen Point Bridge: "Simply stated, more people want to use the highway than it can accommodate." FEIS at 1-2. The FEIS also pointed to the safety concerns of the bridge, noting that the "aging floating bridge is vulnerable to failure in a severe windstorm, and the fixed bridges along the corridor do not meet current seismic standards and could collapse in an earthquake." FEIS at 1-1.

41. The SR 520 project was intended to improve safety and mobility in the SR 520 corridor by replacing aging bridges and adding high-occupancy vehicle (HOV) lanes. As part of its analysis, the FEIS analyzed multiple alternatives, including the identified preferred alternative.

42. The preferred alternative incorporated several elements into its proposed design, including "An improved urban interchange at Montlake Boulevard integrated with a 1,400-foot-long lid configured for transit, pedestrian, and community connectivity." FEIS at 1-17.

43. Under the preferred alternative in the FEIS, the SR 520 interchange with Montlake Boulevard was projected to be similar to the existing interchange, with widened lanes for more capacity. FEIS at 2-46.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

44. The preferred alternative did not consider taking the Montlake Market as part of the project. In fact, figures of the preferred alternative clearly show the Montlake Market as not being directly impacted by the project at all:

FEIS at 2-47 ("Montlake Market" label added).

45. No alternative analyzed in the FEIS considered taking and closing the Montlake Market to make way for the SR 520 project. Consequently, the environmental effects of removing the Montlake Market from the Montlake community were not analyzed in the FEIS.

46. Protecting the Montlake Market was consistent with the legislation that authorized WSDOT to pursue this project. Rather than identify the aim of the project simply in transportation terms, the Washington Legislature took the unusual step of making protection of the neighborhood

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

one of the project purposes, too. *See* RCW 47.01.380 ("The department shall not commence construction on any part of the state route number 520 bridge replacement and HOV project until a record of decision has been reached providing reasonable assurance that project impacts will be avoided, minimized, or mitigated as much as practicable to protect against further adverse impacts on neighborhood environmental quality as a result of repairs and improvements made to the state route number 520 bridge and its connecting roadways, and that any such impacts will be addressed through engineering design choices, mitigation measures, or a combination of both.")

**C. Changes to the SR 520 Project**

47. After FHWA and WSDOT approved the FEIS and approved the final Record of Decision (ROD) on August 4, 2011, the SR 520 project underwent several changes from the alternatives that were analyzed in the FEIS.

48. FHWA regulations specify that after initial environmental review, "the applicant shall consult with the Administration prior to requesting any major approvals or grants to establish whether or not the approved environmental document or [categorical exemption] designation remains valid for the requested Administration action." 40 C.F.R. § 771.129(c).

49. FHWA and WSDOT approved re-evaluations for changes to the project relating to Kenmore Yard, the floating bridge and landings, a Kenmore Yard update, floating bridge and landings proposed final design features, a temporary westside over-water staging area, the west connection bridge, and the floating bridge demolition.

50. On October 31, 2016, FHWA approved a re-evaluation that evaluated how "new information, and proposed refinements to the design of West Approach Bridge South (WABS), the Montlake Lid, stormwater facilities, and other associated project components would affect the

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

natural and built environment and whether those effects differ from the effects described in the Final EIS, Record of Decision (ROD), and subsequent environmental reevaluations."

51. FHWA concluded that changes evaluated in the re-evaluation "would not result in new significant adverse effects."

52. The October 31, 2016 re-evaluation acknowledged that the neighboring Montlake 76 Service Station would need to be demolished.

53. The October 31, 2016 re-evaluation did not identify closure of the Montlake Market as one of the changes to be analyzed in the re-evaluation.

54. The October 31, 2016 re-evaluation did not analyze the impacts of closing the Montlake Market.

55. The October 31, 2016 re-evaluation did not analyze the impact of closing the market on travel times for Montlake residents who routinely use the Montlake Market.

56. The October 31, 2016 re-evaluation did not analyze impact on area roads of the additional vehicles that would be forced onto those roads as a result of closing the Market.

57. The October 31, 2016 re-evaluation did not analyze the changes in land use that would result from closing the market.

58. The October 31, 2016 re-evaluation did not analyze changes in noise, air quality and other environmental impacts that would result from closing the market and using the property as a construction site for five or ten years.

**D. FHWA and WSDOT Change the SR 520 Project Again**

59. By July 2017, the SR 520 Project had again changed. Now, FHWA and WSDOT indicated that the Montlake Market would need to be closed to accommodate a long-term

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

construction staging area or other project purposes. This represented a significant change in the proposal from the project changes presented and analyzed in the October 31, 2016 re-evaluation.

60. On August 15, 2017, the Montlake Community Club and the property owners jointly sent a letter to FHWA alerting the agency that the new plan to close the Montlake Market would result in significant new environmental impacts that had not been analyzed within any NEPA document. Because the new circumstance would cause significant environmental impacts, the Montlake Community Club and property owners requested that the FHWA prepare a supplemental environmental impact statement (SEIS) that properly disclosed and analyzed the environmental consequences of closing the Montlake Market.

61. On September 21, 2017, WSDOT responded on behalf of FHWA to the August 15, 2017 letter, stating that the October 31, 2016 re-evaluation actually did consider the environmental consequences of closing the Montlake Market and, therefore, it would not be initiating a supplemental environmental impact statement.

**CLAIM FOR RELIEF**

62. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

63. NEPA requires federal agencies to take a "hard look" at the direct, indirect, and cumulative impacts of proposed major Federal actions, and at alternatives that could reduce or eliminate those environmental impacts. 42 U.S.C. § 4332(2)(C)(i)-(ii); 40 C.F.R. §§ 1502.16, 1508.7, 1508.8, 1508.25.

64. NEPA imposes a mandatory, nondiscretionary duty on agencies to supplement an already completed analysis when "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c). *See also* 23 C.F.R. § 771.130.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

65. FHWA and WSDOT have failed to issue a supplemental environmental impact statement or otherwise analyze the significant adverse impacts that demolishing the Montlake Market as part of the SR 520 project would have.

66. Neither the 2011 FEIS nor any of the subsequent re-evaluations take the requisite "hard look" at the environmental consequences of closing the Montlake Market.

67. None of the NEPA documents prepared so far, including the various re-evaluations, discharges the FHWA's duty to evaluate the direct, indirect, and cumulative effects of closing the Montlake Market.

68. FHWA and WSDOT's failure to supplement its prior environmental analyses of the SR 520 project in light of the changed circumstances of closing the Montlake Market violates NEPA, 42 U.S.C. § 4332(2)(C), and regulations promulgated thereunder requiring FHWA and WSDOT to analyze the direct, indirect, and cumulative effects of the program, 40 C.F.R. §§ 1502.16, 1508.7, 1508.8, 1508.25 and 23 C.F.R. 771.130.

69. In failing to issue a supplemental environmental impact statement in response to the significant new information and changed circumstances outlined above, FHWA and WSDOT have unlawfully withheld and unreasonably delayed, contrary to the APA, 5 U.S.C. § 706(1)(A) & (2)(A), the issuance of a supplemental environmental impact statement addressing the environmental consequences of demolishing the Montlake Market.

70. FHWA and WSDOT's failure to supplement the 2011 FEIS with analysis of the direct, indirect, and cumulative effects of demolishing the Montlake Market constitutes agency action that is final and reviewable under the APA, 5 U.S.C. §§ 701(b)(2), 702, 704, and 706.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

71. Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

72. Plaintiffs are entitled to their reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act. 28 U.S.C. § 2412.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court grant the following relief:

A. Order, declare, and adjudge that the defendants have violated the National Environmental Policy Act and its implementing regulations, and the Administrative Procedure Act, as set forth above;

B. An order enjoining the defendants from implementation of their decision to close the Montlake Market;

C. An order requiring the defendants to prepare a supplemental draft EIS and supplemental final EIS that corrects the deficiencies identified by the Court;

D. An order vacating the defendants' decisions to approve condemning the Montlake Market property and closing the Montlake Market until such time as the agencies demonstrate to this court that they have adequately complied with the law;

E. Award the plaintiffs their costs, litigation expenses, expert witness fees, and reasonable attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act, and all other applicable authorities; and

F. Grant the plaintiffs any such further relief as may be just, proper, and equitable.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

Dated this 28th day of November, 2017.

Respectfully submitted,

BRICKLIN & NEWMAN, LLP

By: *s/David A. Bricklin*
*s/Jacob Brooks*
David A. Bricklin, WSBA No. 7583
Jacob Brooks, WSBA No. 48720
1424 Fourth Avenue, Suite 500
Seattle, WA 98101
bricklin@bnd-law.com
brooks@bnd-law.com
Attorney for Plaintiffs

COMPLAINT - 17

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300